IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHELLE LEIGH MITCHELL,

      Plaintiff,

vs.                                                     CIV No. 15-0166 CG

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* ("Motion"), (Doc. 19), filed on October 2, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand (Doc. 19)* ("Response"), (Doc. 24), filed on February 5, 2016; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* ("Reply"), (Doc. 26), filed on February 23, 2016.

On August 8, 2012, Michelle Leigh Mitchell filed an application for disability insurance benefits and supplemental security income, alleging disability beginning August 30, 2011. (Administrative Record ("AR") 234–40, 241–46). Her application was denied on November 7, 2012, (AR 166–70), and also upon reconsideration on July 9, 2013. (AR 177–82). Ms. Mitchell filed her request for a hearing before an Administrative Law Judge ("ALJ") on August 6, 2013, (AR 187–89); and a hearing was set for August 4, 2014, before ALJ John W. Rolph. (AR 76–97). Ms. Mitchell and Leslie J. White, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*). Ms. Mitchell was

represented at the hearing by Aaron Fields. (*Id.*). ALJ Rolph issued his opinion on September 23, 2014, finding that Ms. Mitchell was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g) at any time during the alleged disability onset date through the date of the decision. (AR 69). Through new counsel, Michael Armstrong, Ms. Mitchell filed an application for review by the Appeals Council, (AR 54), which was denied, (AR 1–7), making the decision of ALJ Rolph the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Mitchell argues that the ALJ committed reversible, legal error by failing to: (1) properly consider and weigh medical opinions in the record; (2) clearly express Ms. Mitchell's functional limitations related to urinary frequency and incontinence in his residual functional capacity ("RFC") finding; and (3) resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 19 at 2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. In addition, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly weigh the medical opinions in the record, the Court finds that the Motion should be **GRANTED** and the case be **REMANDED** for further proceedings.

I. **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98

(10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

### III.     Background

Ms. Mitchell initially applied for disability benefits and supplemental security income alleging multiple sclerosis ("MS"), numbness in arms and legs, balance and focus problems, coordination problems, and memory loss. (AR 166).

At step one, the ALJ determined that Ms. Mitchell had not engaged in substantial gainful activity since her alleged onset date of disability of August 30, 2011. (AR 60). At step two, the ALJ concluded that Ms. Mitchell was severely impaired by MS with right side numbness, weakness, fatigue, and balance issues, scoliosis or lumbago, cervical spine problems and neck pain, and adjustment disorder with depression and anxiety. (*Id*).

At step three, the ALJ explained that he specifically considered whether Ms. Mitchell's impairments satisfied or met any of the listed impairments. He determined that none of Ms. Mitchell's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR 61).

The ALJ proceeded to step four. First, he analyzed Ms. Mitchell's subjective complaints of her physical and psychological symptoms and the objective medical evidence in the record. (AR 63–68). The ALJ found that Ms. Mitchell's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (AR 64). The ALJ discussed medical records from Presbyterian Medical Group and Ms. Mitchell's participation in a clinical trial of treatment through the University of New Mexico. (AR 64). The ALJ also considered the reports and opinions of Paula

Hughson, M.D., Diana Go, M.D., and Martin Rasmussen, L.P.C.C., discussing Ms. Mitchell's physical and mental impairments and limitations. (AR 65–66).

The ALJ ultimately found that Ms. Mitchell has the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (AR 63). Physically, the ALJ found that Ms. Mitchell is limited to: lifting and/or carrying ten pounds occasionally, and up to five pounds frequently; standing and/or walking for six hours out of an eight-hour workday with regular breaks; sitting for six hours out of an eight-hour workday with regular breaks; and pushing and/or pulling ten pounds occasionally, and five pounds frequently. In addition, Ms. Mitchell must be allowed to sit or stand alternately at forty-five to sixty minute intervals for two to three minutes at a time, during which period she may remain on task. She may occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but may never climb ladders, ropes, or scaffolds. She must avoid more than occasional exposure to extreme cold, heat, humidity, and vibration and must avoid all exposure to hazards such as moving machinery and unsecured heights. Mentally, the ALJ determined that Ms. Mitchell is fully capable of learning, remembering, and performing simple, routine, and repetitive work tasks involving simple work instructions, which are performed in a routine, predictable, and low-stress work environment, defined as one in which there is a regular pace, few work place changes, and no "over the shoulder" supervision. Finally, the ALJ determined that Ms. Mitchell requires ready access to restroom facilities in the workplace. (*Id.*).

The ALJ then explained that, based on the testimony from the VE, Ms. Mitchell is unable to perform any of her past relevant work. (AR 68). Accordingly, the ALJ proceeded to step five.

At step five, the ALJ inquired whether Ms. Mitchell would be able to perform any other work existing in significant numbers in the national economy. (AR 68–69). The ALJ noted that Ms. Mitchell was 34 years old on the alleged disability onset date, and therefore classified as a "younger individual" in accordance with the Regulations. (AR 68). The ALJ also determined that Ms. Mitchell has at least a high school education and is able to communicate in English. (*Id.*).

The VE testified at the hearing that an individual with Ms. Mitchell's same age, education, work experience, and RFC could perform the jobs of document preparer and call out operator. (AR 69). The VE stated that those jobs existed in significant numbers in the national economy. (*Id.*). After finding the VE's testimony to be consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (*Id.*).

The ALJ concluded that because Ms. Mitchell is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 69–70).

**IV.   Analysis**

Ms. Mitchell argues that the ALJ committed reversible, legal error by failing to: (1) properly consider and weigh the medical opinions of Paula Hughson, M.D. and Martin Rasmussen, L.P.C.C.; (2) clearly express Ms. Mitchell's functional limitations related to urinary frequency and incontinence in his RFC finding; and (3) resolve a conflict between the VE's testimony and the DOT. (Doc. 19 at 2).

7

The Commissioner responds that the ALJ properly weighed all medical opinions in the record. (Doc. 24 at 8–12). The Commissioner further argues that the ALJ's RFC finding adequately accounted for Ms. Mitchell's urinary frequency and incontinence. (Doc. 24 at 12–13). Finally, the Commissioner maintains that the ALJ specifically questioned the VE about whether her testimony was consistent with the DOT, and that there was no conflict. (Doc. 24 at 13–15).

### A. *Requirement to Weigh All Medical Opinions in the Record*

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see also* 20 C.F.R. § 416.927 (c)–(d). Ultimately, the ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, No. 06-6343, 224 Fed. Appx. 880, 884 (10th Cir. Aug. 8, 2007) (unpublished).

### B. *The ALJ's Analysis of Medical Opinions in the Record*

With regard to opinion evidence in the record, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 63). In his decision, the ALJ discusses the specific findings of Paula Hughson, M.D., Diana Go, M.D., and Martin Rasmussen, L.P.C.C. (AR 65–66). Ms. Mitchell argues that the ALJ improperly weighed and considered the opinions of Dr. Hughson and Mr. Rasmussen.

Dr. Hughson performed a psychiatric consultative examination of Ms. Mitchell on October 30, 2012. (AR 405–10). In the report, Dr. Hughson diagnosed Ms. Mitchell with adjustment disorder with mild depression and anxiety. (AR 408). She opined that Ms. Mitchell's prognosis is uncertain given the nature of her illness, (*id.*), and that she is moderately limited in her ability to understand and remember detailed or complex instructions; moderately to markedly limited in her ability to carry out instructions; mildly to moderately limited in her ability to attend and concentrate; and moderately limited in her ability to adapt to changes in the workplace. (AR 410). Dr. Hughson gave Ms. Mitchell a Global Assessment of Functioning ("GAF") score of 50, indicating some serious symptoms and impairments.[2] (AR 408).

The ALJ stated that he generally placed great weight on Dr. Hughson's opinions. (AR 65). The ALJ did not specifically indicate the weight he afforded Ms. Mitchell's GAF score, but did explain that a GAF score of 50 is very close to a finding of moderate

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). A GAF between 41 and 50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citing *Langley*, 373 F.3d at 1122 n.3). GAF scores between 41 and 50 suggest an inability to keep a job. *Id*.

9

symptoms or a moderate difficulty in functioning, which is consistent with the ALJ's findings throughout the written decision. (*Id.*). In addition, he explained that the GAF score is "only a snapshot in time and not an indication of the claimant's overall mental health over a 12-month period." (*Id.*).

It is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (internal citations omitted). Here, the ALJ placed great weight on Dr. Hughson's opinions, and seems to have rejected, or afforded less weight to Ms. Mitchell's GAF score in Dr. Hughson's report. The Court is satisfied with the ALJ's explanation as to the rejection of Ms. Mitchell's GAF score and why it was not necessarily incorporated in the RFC.

The ALJ does not, however, explain the weight he afforded a portion of Dr. Hughson's opinion which is not consistent with the RFC finding. Indeed, while Dr. Hughson found that Ms. Mitchell is moderately to markedly limited in her ability to carry out instructions, the RFC indicates that Ms. Mitchells is "fully capable of . . . performing simple, routine, and repetitive work tasks involving simple work instructions." (AR 63).

The Commissioner argues that the ALJ accounted for Dr. Hughson's opinion of Ms. Mitchell's limitations in the RFC determination. (Doc. 24 at 9). Specifically, the Commissioner maintains that, while Ms. Mitchell assumes that Dr. Hughson opined that she had a moderate to marked impairment in carrying out simple instructions, Dr. Hughson's opinion only states that Ms. Mitchell is moderately to markedly limited in her ability to carry out instructions generally; the form does not indicate whether this

limitation applies to her ability to carry out simple or more detailed and complex instructions. (Doc. 24 at 10). Thus, the Commissioner argues, the ALJ was free to implicitly interpret Dr. Hughson's opinion to mean that Ms. Mitchell's ability to carry out very short and simple instructions is moderately limited, while her ability to carry out detailed or complex instructions is markedly limited. (*Id.*). Because a "moderate" impairment is defined as only a slight limitation, the Commissioner contends that the ALJ adequately accounted for this limitation in the RFC. (*Id.*). This argument fails for several reasons.

First, the ALJ did not provide this explanation in his analysis and weighing of Dr. Hughson's opinion in the decision. (*See* AR 65). As a result, the Court does not accept the Commissioner's reasoning, as this *post hoc* argument cannot supplement the ALJ's decision. *See Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007).

Second, even considering the Commissioner's argument, a review of the decision indicates that the ALJ did not adopt the same interpretation as the Commissioner. In fact, in his discussion of Dr. Hughson's report, the ALJ unequivocally states that "Dr. Hughson felt [Ms. Mitchell] would have no problems understanding and remembering simple instructions; however, she would have a moderate to marked degree of difficulty carrying out those instructions." (AR 65). Given the ALJ's stated interpretation of Dr. Hughson's opinion, the Court finds it clear that the ALJ failed to either incorporate Dr. Hughson's opinion or explain why he did not place great weight on this portion of her report. The ALJ's finding that Ms. Mitchell is "fully capable of . . . performing simple, routine, and repetitive work tasks involving simple work instructions," (AR 63), cannot be

reconciled with his interpretation of Dr. Hughson's opinion that Ms. Mitchell is moderately to markedly limited in her ability to carry out even simple instructions.

Third, even if the ALJ did interpret Dr. Hughson's opinion as the Commissioner suggests, i.e. that Ms. Mitchell is moderately impaired in her ability to carry out simple instructions, the RFC does not account for any type of limitation in Ms. Mitchell's ability to carry out simple instructions. While both the Commissioner and the ALJ note that a moderate limitation is defined as slight limitation in an area, the Social Security Administration's Program Operations Manual Systems ("POMS") acknowledges that a moderate impairment supports the conclusion that an individual's capacity to perform work is impaired. POMS DI 24510.063(2), *available at* https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063. In addition, the Tenth Circuit has recognized that moderate impairments may decrease a claimant's ability to perform work. *Bowers v. Astrue*, No. 07-5114, 271 Fed. Appx. 731, 733–34 (10th Cir. Mar. 26, 2008) (unpublished). The ALJ's finding that Ms. Mitchell is "fully capable of . . . performing simple, routine, and repetitive work tasks involving simple work instructions," (AR 63), simply does not account for any limitation, however slight, in her ability to carry out instructions.

Thus, although the ALJ placed "great weight" on Dr. Hughson's opinion, which included that Ms. Mitchell was moderately to markedly limited in her ability to carry out instructions, this limitation is not reflected in the ALJ's RFC finding. The ALJ seems to have implicitly rejected that finding, and therefore inappropriately "'us[ed] portions of evidence favorable to [his] position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)). This selective application of Dr. Hughson's report without explanation

is error, and requires a remand in order for the ALJ to explain the evidentiary basis for his RFC determination. *Haga,* 482 F.3d at 1208.

### V.     Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions of Paula Hughson, M.D. On remand, the ALJ should properly weigh all medical opinions in the record. The Court does not decide any other issue raised by Ms. Mitchell, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 19), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE